# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re**

JAMES MICHAEL GIBSON
and TINA MARIE GIBSON,
**Debtor.**

**Bankruptcy Case
No. 09-01196-JDP**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Jeff Heineman, BAUER & FRENCH, Boise, Idaho, Attorney for Debtors.

Kathleen McCallister, Kuna, Idaho, Chapter 13 Trustee.

*Procedural Background*

On May 5, 2009, Debtors James and Tina Gibson ("Debtors") filed a chapter 13 petition, along with a proposed plan and related motions.[1]

---

[1] Unless otherwise indicated, all statutory references including those to chapters or sections are to the Bankruptcy Code, Title 11, U.S. Code §§ 101 - 1532. All rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 1

Debtors' plan drew an objection from the standing chapter 13 trustee Kathleen McCallister ("Trustee").  Confirmation of that plan was denied by the Court at a hearing on June 30, 2009.

The following day, Debtors filed an amended plan, as well as an amended chapter 13 statement of current monthly income, or Form B22C. *See* Docket Nos. 33-34.  Trustee objected to confirmation of the amended plan as well.  Docket No. 37.  In the objection, Trustee identified three obstacles to confirmation of the amended plan:  (1) the amended plan failed to provide that all of Debtors' projected disposable income to be received during the applicable commitment period would be paid into the plan; (2) the amended plan was not filed in good faith; and (3) it was unclear whether, as proposed, Trustee could administer the amended plan.

The Court conducted a confirmation hearing concerning the amended plan on August 4, 2009, at the conclusion of which it took the issues raised by Trustee's objection under advisement.

MEMORANDUM OF DECISION - 2

*Analysis and Discussion*

**A.     Disposable Income.**

Just prior to filing their bankruptcy petition, Debtors elected to begin making contributions to James Gibson's employer-sponsored 401(k) plan.  On line 55 of their Form B22C, Debtors include a $600 monthly expense for this purpose.  This deduction, along with Debtors' other expenses, leaves Debtors with a monthly disposable income of negative $119.45.  *See* Docket No. 33, line 59.  Debtors argue that this expense item is proper and that because they have negative disposable income, their plan proposing forty-two (42) monthly payments of $850 is confirmable.  *See* Amended Plan, Docket No. 34 at ¶ 1.1.

Trustee argues that allowing a deduction for the 401(k) plan contributions under these facts is improper.  Trustee points out that Debtors did not make 401(k) plan contributions in the six months prior to filing their petition and, therefore, they should not be allowed to deduct them going forward.  Citing a recent decision of this Court, Trustee explains that it would be inconsistent to apply a backward-looking

MEMORANDUM OF DECISION - 3

approach to income, but to adopt a forward-looking approach to determining expenses. *See In re Varner*, 09.2 I.B.C.R. 52, 54 (Bankr. D. Idaho 2009).[2] Trustee argues that a correct Form B22C, without the 401(k) plan contributions, would show Debtors have a positive monthly disposable income of $481, therefore requiring them to propose a sixty (60) month plan. *See* 11 U.S.C. §§ 1325(b)(1) and (b)(4).

Trustee is correct in noting that the first contribution to James Gibson's 401(k) plan was withheld from his paycheck on May 15, 2009, ten days after Debtors' petition was filed. But Debtors' counsel argues that Debtors had made the decision and commitment to contribute to the retirement plan prior to filing their petition.[3]

Whether Debtors had been making retirement contributions prior to

---

[2] In *In re Varner*, the Court addressed whether, in calculating disposable income, a chapter 13 debtor could deduct monthly secured debt payments for property which she intended to surrender. The Court acknowledged that bankruptcy courts were split on that issue, but aligned itself with those courts that had allowed the deduction. 09.2 I.B.C.R. at 54

[3] Indeed, several documents from the 401(k) plan administrator introduced into evidence show that in the month prior to Debtors' bankruptcy filing, James Gibson requested the relevant changes to his 401(k) investment elections. *See* Docket No. 40, Exs. F - H.

MEMORANDUM OF DECISION - 4

filing their petition is of no moment in the disposable income analysis because the Code expressly excepts such contributions from a debtor's disposable income. Section 541(b)(7) provides:

> (b) Property of the estate does not include–
> . . .
>    (7) any amount–
>       (A) withheld by an employer from the wages of
>       employees for payment as contributions–
>          (i) to–
>             (I) an employee benefit plan that is subject
>             to title I of the Employee Retirement
>             Income Security Act of 1974 or under an
>             employee benefit plan which is a
>             governmental plan under section 414(d) of
>             the Internal Revenue Code of 1986;
>             . . .
>       except that such amount under this subparagraph
>       shall not constitute disposable income as defined
>       in section 1325(b)(2)[.]

11 U.S.C. § 541(b)(7). Even if Debtors had not decided to begin making contributions to their 401(k) plan until after they filed their bankruptcy petition, the contributions would still not be classified as disposable income. As one court put it,

> by excluding 401(k) contributions from property of the estate
> and expressly removing them from the definition of

MEMORANDUM OF DECISION - 5

> disposable income under section 1325, *see* 11 U.S.C.
> § 541(b)(7), Congress has implemented a policy of protecting
> and encouraging retirement savings.

*In re Mati*, 390 B.R. 11, 17 (Bankr. D. Mass. 2008); *see also Baxter v. Johnson (In re Johnson)*, 346 B.R. 256, 262-63 (Bankr. S.D. Ga. 2006).

Trustee's contention that Debtors plan must propose 60 monthly payments is also incorrect. If the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, and the debtor is not providing full payment of allowed unsecured claims, the debtor must propose a plan in which all "projected disposable income" is submitted to make payments for the "applicable commitment period" in order for the plan to be confirmed. 11 U.S.C. § 1325(b)(1). However, as the Ninth Circuit has explained:

> There is no language in the Bankruptcy Code that requires all plans to be held open for the "applicable commitment period." Section 1325(b)(4) does not contain a freestanding plan length requirement; rather, its exclusive purpose is to define "applicable commitment period" for purposes of the § 1325(b)(1)(B) calculation. Subsection (b)(4) states "For purposes of this subsection, the 'applicable commitment period' . . . shall be . . . not less than 5 years" for above-median debtors. Subsection (b)(1)(B) states that "the

MEMORANDUM OF DECISION - 6

> debtor's 'projected disposable income' to be received in the 'applicable commitment period' . . . will be applied to make payments under the plan." When read together, only "projected disposable income" has to be paid out over the "applicable commitment period." When there is no "projected disposable income," there is no "applicable commitment period."

*Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 876 (9th Cir. 2008).

It is undisputed that Debtors are above-median income debtors. However, § 541(b)(7) expressly removes their 401(k) plan contributions from disposable income, which renders their monthly disposable income negative, and therefore, they have no "projected disposable income."[4] Like the debtor in *In re Kagenveama*, Debtors may propose a plan with a term of less than five years.

Trustee's objection to confirmation based upon disposable income is overruled.

**B.     Good Faith.**

---

[4] In *In re Kagenveama*, the court held that "projected disposable income" was simply a mechanical computation of "disposable income" as defined by § 1325(b)(2), projected out over the "applicable commitment period;" it is not a forward-looking concept where "disposable income" is merely the starting point in the analysis. 541 F.3d at 872.

MEMORANDUM OF DECISION - 7

Trustee also objects that Debtors' amended plan was not filed in good faith as required by § 1325(a)(3).  This objection is premised in part upon the Debtors' intention to make the new 401(k) plan contributions, and in part upon Debtors' attempt to remove a standard chapter 13 plan provision regarding wage deduction orders.

### 1.      Debtors' 401(k) Plan Contributions.

Trustee argues that because of Debtors' 401(k) plan contributions, less money is available to fund the plan than would otherwise be required, and as a result, the dividend paid through the proposed plan to unsecured creditors is diminished.  While Trustee may be correct on that point, it does not compel a finding that Debtors' plan was not proposed in good faith.  Other bankruptcy courts have concluded that the mere existence of monthly contributions to retirement plans does not necessarily evidence bad faith.  For example, one court found that debtors may in good faith make contributions to their 401(k) plans, so long as such contributions do not exceed the limits legally permitted by those plans.  *In re Johnson*, 346 B.R. at 263.  Another court agreed with this reasoning, and noted that by

MEMORANDUM OF DECISION - 8

making 401(k) contributions, a debtor was "merely taking advantage of what the law allows." *In re Mati*, 390 B.R. at 17.

On the other hand, a debtor may not completely shelter available resources in a retirement plan at the expense of his creditors. In *In re Shelton*, 370 B.R. 861 (Bankr. N.D. Ga. 2007), a debtor attempted to do just that. There, the debtor proposed a zero percent dividend (or 0% payout) to unsecured nonpriority creditors, a payment to secured creditors of $550 a month, and a retirement plan contribution of $655 a month. According to the court, "[t]he proposed plan would permit Debtor, over the course of the plan, to shelter $39,300 in his retirement account, pay approximately $33,000 to secured creditors or lose the assets representing collateral, pay nothing to unsecured creditors, and discharge $89,237 in, primarily, credit card debt." *Id.* at 868. In sustaining the trustee's objection to confirmation, that court observed, "[a]chieving an appropriate balance between payment of unsecured creditors and saving retirement funds is the natural end of viewing the totality of Debtor's circumstances." *Id.* at 869.

The type of abuse which the bankruptcy court in *In re Shelton*

MEMORANDUM OF DECISION - 9

perceived is not present here. In this case, Debtors' plan, if confirmed, will pay their unsecured creditors approximately $16,000 over the life of the plan. Their plan hardly represents an attempt to shelter their income and pay little or nothing to their creditors. Reasonable, measured planning for retirement is responsible and should be encouraged provided the amount of plan contributions are balanced and proportionate to amounts being paid on debt. Accordingly, Trustee's objection to their good faith is overruled.[5]

**2.      Wage deduction order provisions.**

"After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee." 11 U.S.C. § 1325(c). As authorized by this Code provision, the standard form chapter 13 plan used in the District of Idaho provides:

> 1.4     **WAGE DEDUCTION ORDER**. Debtor acknowledges that if the debtor is ever more than thirty (30) days

---

[5] Again, this is not the situation where the debtor commences making contributions only after bankruptcy, a tactic which, while not impacting the amount of the debtor's disposable income, would have to be justified under the scrutiny of a trustee's good faith objection.

MEMORANDUM OF DECISION - 10

> delinquent on any payment due under Section 1.1 of
> this plan, upon request of the trustee, a wage deduction
> order to debtor's employer may immediately be issued.

Standard chapter 13 plan, Rev. 1/1/09.[6]  Debtors have deleted this provision from their amended plan, arguing that it is not necessary for confirmation.  Debtors worry that if such a wage deduction order were to issue in their case, Debtors may possibly be subjected to unfavorable treatment from their employers because honoring such orders is an administrative burden.

At the hearing, the Court reminded Debtors and their counsel that discrimination by employers against individuals solely because they are debtors in a bankruptcy case is unlawful.  *See* 11 U.S.C. § 525(b); *Leonard v. St. Rose Dominican Hospital (In re Majewski)*, 310 F.3d 653, 656 (9th Cir. 2002).  Nonetheless, Debtors and their lawyer persisted in seeking to confirm their plan without a wage deduction provision, offering to work with Trustee privately to resolve any payment delinquency issues prior to

---

[6] The standard form plan is available at the Court's website at: www.id.uscourts.gov.

MEMORANDUM OF DECISION - 11

a wage deduction order being issued.

Trustee prefers to include the wage deduction provision in the plan. She explained to the Court that debtors know when they are not current on plan payments, and the thirty day reprieve in the standard provision offers ample time for debtors to resolve payment issues with Trustee prior to the order being requested.[7]

Trustee's approach to administering plans is reasonable. Trustee is duty-bound to ensure that Debtors' plan is performed. *See* 11 U.S.C. § 1302(a)(5). The standard wage deduction provision offers Debtors sufficient time to contact Trustee about any delinquent payments and propose alternatives to issuance of a wage deduction order. Moreover, once issued, Debtors are free to ask the Court to withdraw the order, assuming they are willing and able to make timely direct payments. As a measured tool to assist chapter 13 trustees in their difficult jobs, the wage deduction provision makes sense. Debtors' fear that their employers may

---

[7] Trustee acknowledged that in some cases, due to the manner in which her office processes cases, debtors may have as much as sixty (60) days in which to cure any delinquencies before a wage deduction order would be requested.

MEMORANDUM OF DECISION - 12

willfully violate federal law if a wage deduction order is issued is not good cause to omit it.  In the absence of an agreement between the parties modifying this provision, the Court elects to defer to Trustee's approach.  Absent come persuasive cause to the contrary, to be confirmed, Debtors' plan must include the standard form wage deduction provision.[8]

## C.     Feasibility.

Debtors' amended plan requires that any unpaid attorneys' fees and costs allowed to Debtors' counsel by the Court be paid in equal monthly installments over the initial twelve (12) months of distributions under the plan.  *See* Amended Plan, Docket No. 34 at ¶ 3.3.

Trustee objected to this provision; she argued that because she did not know what the total amount of attorneys' fees would be, it was

---

[8] Some districts have required that plan payments be made via a wage deduction order in all chapter 13 cases.  *See, e.g.,* General Order 05-03, (Bankr. E.D. Cal.) ("After confirmation of a plan, plan payments shall be by Wage Order.").  Others have authorized the standing trustees to file such orders, but have not required their use in all instances.  *See, e.g.,* General Order - *Trustee's Direction to Pay Debtor's Earning to Trustee*, (Bankr. W.D. Wash.) ("the Standing Chapter 13 Trustees for the Western District of Washington, are authorized to send a Direction to Pay Debtor's Earnings to Trustee to debtors' employers[.]").

MEMORANDUM OF DECISION - 13

impossible for her to determine whether there would be adequate funds to administer the amended plan as currently drafted. She explained that if the allowed attorneys' fees were anything higher than $1,296, then the plan would not be feasible. At the time of the last confirmation hearing, Debtors' counsel could not estimate with any degree of certainty the amount of attorneys' fees he would be seeking in this case. However, he suggested that any feasibility issues on this score could be remedied by his agreement to accept payments over a longer term, and that this remedy could be incorporated in a confirmation order. The Court agrees with this approach. Whatever the amounts of allowed attorneys fees and costs are, the parties shall incorporate an administratively feasible provision for payment of those amounts in the confirmation order.

### *Conclusion*

Trustee's objection to confirmation based upon Debtors' 401(k) plan contributions is overruled. However, Trustee's objection to Debtors' omission of the standard plan form provision for issuance of a wage deduction order if Debtors default on payments is sustained.

MEMORANDUM OF DECISION - 14

The plan before the Court can not be confirmed. Debtors shall be allowed an appropriate opportunity to amend their plan to conform to this decision, and if no further notice or hearing is required, to submit a form of confirmation order approved by Trustee to the Court. If they fail to do so within a reasonable time, Trustee may move to dismiss this case.

No final order will be entered at this time.

Dated: August 31, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 15